IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

RANDY EDWARD GOODRUM,           §
# 1065104                       §
                                §
v.                              §        CIVIL ACTION NO. G-04-729
                                §
NATHANIEL QUARTERMAN,           §
DIRECTOR OF TDCJ-CID            §

## REPORT AND RECOMMENDATION

Before the Court is the Petition for a Writ of Habeas Corpus of Randy Edward Goodrum, a prisoner in the Texas Department of Criminal Justice--Correctional Institutions Division ("TDCJ-CID").  Respondent filed a Motion for Summary Judgment seeking dismissal with prejudice of Petitioner's claims.  Petitioner filed a response.  Also before the Court is the Petitioner's "Motion/Request for Reconsideration of the Denial of His Second Motion for Evidentiary Hearing." Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254.  The State has custody of Petitioner pursuant to a judgment and sentence entered by the 23rd District Court of Brazoria County, Texas on September 28, 2001.  Petitioner was indicted and charged with two counts of aggravated sexual assault with a deadly weapon which occurred on or about June14, 1997.  The indictment also contained eleven (11) enhancement paragraphs for prior felony offenses.  Petitioner pled "not guilty" to the charges and "not true" to the enhancements.  The

1

case was tried to a jury.  The jury, after hearing all the evidence, found Petitioner guilty of both counts of aggravated sexual assault with a deadly weapon.  The jury also found five (5) of the enhancement paragraphs were true.  Petitioner was assessed a punishment of life imprisonment.

Petitioner appealed his conviction.  The court of appeals affirmed his conviction on May 1, 2003, and denied his motion for rehearing.  *Goodrum v. State*, No. 01-01-00950-CR (Tex.App.–Hous. [1st Dist.] 2003).  He filed a petition for discretionary review ("PDR"), which was refused by the Texas Court of Criminal Appeal on October 8, 2003.  On March 29, 2004, Petitioner filed a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  The state district court submitted findings of fact and conclusions of law to the Texas Court of Criminal Appeals, and the Texas Court later denied his writ without written order on August 25, 2004.  Petitioner filed the instant writ in federal court on November 8, 2004.

In his federal writ, Petitioner sets forth the following grounds upon which he requests relief: (1) his conviction was obtained as a result of an illegal search and seizure; (2) the evidence was legally insufficient to convict him; (3) he received ineffective assistance of trial counsel; and (4) he received ineffective assistance of appellate counsel.

A.  The Illegal Search Issue

Petitioner alleges his conviction was based on an illegal search and seizure of his blood and hair samples in violation of his Fourth Amendment rights.  (Pet. at 7; Pet'r Memo. at 12-18). However, such a claim cannot be raised in a federal habeas writ when the State has provided an opportunity for a full and fair litigation of the issue.  *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006); *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003).  When "a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, *Stone v. Powell* bars

2

federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Craver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978).  Here, Petitioner had several opportunities and did, in fact, raise this issue in the state court.  He cannot, therefore, raise it at this point.

The Court **RECOMMENDS** that Respondent's Motion be **GRANTED** on this point.

B.  Issue of Legal Insufficiency

In his second claim, Petitioner maintains that the evidence presented to the jury was legally insufficient to support a finding of guilt.  (Pet. at 7; Pet'r Memo. at 18-31).  Respondent asserts that this claim was not raised in the state courts and, as such, is unexhausted and now procedurally barred.  (State Answer at 5-7).  In his reply, Petitioner contends he is not procedurally barred because he raised this issue with the state court.

The AEDPA requires that a prisoner who seeks habeas relief in federal court must first exhaust all remedies available to him in state court.  28 U.S.C. § 2254.  All the grounds raised in a federal writ must have been fairly and properly presented to highest state court.  *Picard v. Conner*, 404 U.S. 270, 275 (1971).  In this case, Petitioner never presented the claim of legal sufficiency to the highest state court.[1]  The instant writ is therefore a "mixed petition" that ordinarily would be dismissed without prejudice for the failure to exhaust administrative remedies.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  However, the exhaustion requirement is satisfied if the unexhausted claim

---

[1] Reviewing the state records, this Court observes that the issue of factual sufficiency was clearly raised in his appeal, but the issue of legal sufficiency was not asserted.  *Goodrum v. State,* [appellant's brief and appellant's supplemental brief] at 4, 31-36;  *Goodrum v. State*, No. 01-01-00950-CR, slip at 14-20).  The Court further observes that while Petitioner filed a *pro se* motion in which he urged the appellate court to rehear his appeal because the court did not address the issue of legal sufficiency, the appellate court denied Petitioner's Motion for Rehearing.  Thereafter, Petitioner did not include this claim in his PDR.  Instead, Petitioner merely asserts that the court of appeals, in deciding the issue of factual sufficiency, did not apply the correct standard and instead incorrectly weighed the facts under a legal sufficiency standard.

3

would be procedurally barred under state law.  *Fuller v. Johnson*, 158 F.3d 903, 905 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133 (1999).  Under Texas law, Petitioner could not present this unexhausted claim in a habeas writ because claims of insufficient evidence are ordinarily not cognizable in Texas in a habeas proceeding.  *Ex parte McLain*, 869 S.W.2d 349 (Tex. Crim. App. - 1994).  It has long been held under Texas law that a claim of legal insufficiency cannot be raised in a writ of habeas corpus; it can only be asserted in a direct appeal.  *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997).  Texas courts regularly uphold such procedural bars. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995), *cert. denied*, 515 U.S. 1153 (1995).  Therefore, to overcome this bar, Petitioner must demonstrate either cause and prejudice or show that a fundamental miscarriage of justice would result from the Court's failure to consider his claims. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Fearance*, 56 F.3d at 642.  He has made no attempt to demonstrate either prong of this requirement.  Accordingly, Petitioner's claim of legal sufficiency, which was not previously presented to the Texas Court of Criminal Appeals, is procedurally barred from being raised in this federal writ.

Nevertheless, even to the extent that Petitioner's legal insufficiency claim was not barred, the claim would fail.  In determining a claim for legal insufficiency, a federal habeas court decides whether "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary" for the crime's essential elements.  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  All credibility choices must be construed in favor of the verdict.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000).  Here, the State had a strong case in both guilt/innocence and the punishment phase of the trial.  The evidence presented included: testimony from the victim identifying the Petitioner as the man who delivered her refrigerator; the victim's testimony that Petitioner's voice matched that of her attacker;  testimony

from a witness that he saw a truck, matching the description of Petitioner's truck, at the scene and at the time of the rape; and, perhaps most significantly, evidence that Petitioner's DNA profile was consistent with the DNA profile obtained from the victim's nightshirt on the night she was attacked, as well as from carpet fibers in the victim's home where she stated the sexual assault occurred, with further testimony that there was only a 1 in 120 billion chance that these two sources of DNA would randomly match.  (Trial Transcript ("T.T."), Vol. 6 at 25-30).  Viewing the case in a light most favorable to the prosecution, the evidence was clearly legally sufficient to support the verdict of guilt.

The Court **RECOMMENDS** that the Respondent's Motion be **GRANTED** on this point.

C.   Claim of Ineffective Assistance of Trial Counsel

Petitioner recites a long list of alleged errors that he claims resulted in ineffective representation at trial.  Petitioner claims that his trial attorney committed the following errors: (1) failed to contact and investigate witnesses; (2) failed to prepare for a suppression hearing; (3) failed to pursue discovery motions; (4) failed to investigate Petitioner's truck; (5) failed to call Petitioner's jail doctor as a witness; (6) failed to retest DNA evidence; (7) failed to object to the testimony of a state's witness; (8) failed to use available funds to employ an investigator; (9) failed to obtain an independent blood sample from Petitioner for testing; (10) failed to investigate, prepare, and present an alibi defense; (11) failed to investigate the victim's former spouse as a potential suspect; (12) failed to sever the two counts in the indictment; (13) failed to have a DNA expert in court; (14) failed to obtain a voice comparison lineup; and (15) failed to contact, prepare, and present witnesses during the punishment phase of the trial.  (Pet. at 7-8).

The Sixth Amendment to the Constitution provides criminal defendants a right to effective assistance of counsel.  U.S. CONST., Amend. VI.  It does not, however, guarantee a criminal

5

defendant errorless representation. *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983), *cert. denied*, 466 U.S. 975 (1984). To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner's failure to establish either prong of *Strickland* necessarily requires a finding that counsel's performance was constitutionally effective. *Id.* at 687.

The first prong of *Strickland* requires a petitioner to establish that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. The courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689; *see also, Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992), *cert. denied*, 59 U.S. 921 (1993) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that assistance was reasonably effective). Furthermore, there is a presumption that counsel's strategic decisions cannot amount to ineffectiveness. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also*, *Moreno*, 717 F.2d at 177 (counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial"). Therefore, when making that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Strickland*, 466 U.S. at 688 (an ineffective claim is judged not by isolating a portion of counsel's representation, but on the totality of the representation).

6

Even when counsel's performance is deficient, a petitioner will not prevail on a claim of ineffective assistance of counsel unless he can satisfy the second prong of the test which requires a showing of prejudice. *Id.* at 687. To establish prejudice, a petitioner must establish that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" means a probability sufficient to undermine the confidence in the outcome. *Id.* A petitioner must "affirmatively prove prejudice." *Id.* at 693. A petitioner cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir.), *cert. denied*, 506 U.S. 829 (1992). Nor can a petitioner rely on conclusory allegations to satisfy this prong. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982), *cert. denied*, 461 U.S. 951 (1983); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Finally, when there has been an adjudication on the merits in state court, as there has been in this case,[2] a federal court must afford considerable deference to the state court's findings of fact in the course of deciding a claim of ineffective assistance of counsel. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099 (1998). A federal court may not grant habeas relief unless it decides that the state court's application of the *Strickland* standard was "objectively unreasonable." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000). In making this determination a federal court must focus on the state court's ultimate legal conclusions, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003).

1. *Issues Regarding Investigation, Interview & Presenting An Alibi Defense*

---

[2] Petitioner presented claims of ineffective assistance on appeal, as well as in his state writ of habeas corpus, and, in each case, the Court of Criminal Appeals denied the claims. *Goodrum v. State*, slip op. at 24-25; *Ex parte Goodrum*, Applic. No. 21-645-03.

Petitioner's first, fourth, eighth, tenth, and eleventh claims all involve claims that counsel failed to investigate the case, contact and interview witnesses, and present an alibi defense.

Initially, with regard to his first and tenth claim, Petitioner contends that trial counsel failed to contact and interview witnesses and also failed to present an alibi witness to aid his defense. In support of these claims, Petitioner attached to his state writ a number of affidavits from family members that include: (1) his common-law wife, Ronni Cobb; (2) his step-brother, Kenneth Wayne Holley; (3) his brother, Russell Goodrum; (4) his mother, Norma Holley; and (5) his ex-wife, Loralie Hursman. Petitioner contends that had these potential witnesses testified, they could have contradicted the State's evidence by testifying that Petitioner did not work for Kenneth Holley in his furniture delivery business. He also contends that had Ronni Cobb testified she would have provided him with an alibi defense.

Petitioner's claim that defense counsel failed to interview and present the alibi testimony of Ronni Cobb is unfounded. Although Petitioner now contends that counsel's conduct was deficient for failing to interview and present Ronni Cobb as a witness, the record reveals that he told counsel "his wife was living in Hawaii and that [counsel] would be unable to speak with her, and she was not available as an alibi witness." *Ex parte Goodrum* at 227 (affidavit of defense counsel Stanley G. McGee). Petitioner does not dispute this. "When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless...counsel's failure to pursue these investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691; *see also, Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997) (trial counsel was not ineffective for failing to discover evidence about which defendant knew but withheld from his counsel). Although Cobb states in her affidavit that she was "able and prepared to testify," there is no indication of when she returned from Hawaii or, even if she had returned prior to the trial, why she did not appear at his trial

or why Petitioner did not inform his attorney that she had returned.  Petitioner has not established

counsel's performance was deficient.  Furthermore, Petitioner also fails to establish prejudice.

Petitioner's allegations that counsel failed to contact and interview potential witnesses is

equally without merit.  Initially, this Court observes that, in response to Petitioner's claims, trial

counsel responded by way of affidavit in which he swore to the following:

> I have been accused of failing to contact or interview potential
> witnesses for the defense or the State of Texas who would be
> favorable.  As I recall, I interviewed Kenneth Holley, Russell
> Goodrum, David Rivas, and Ruth West.  The victim, as I recall,
> refused to speak with me.  Mr. Goodrum told me his wife was living
> in Hawaii and that I would be unable to speak with her, and she was
> not available as an alibi witness.  I recall speaking with Mr.
> Goodrum's mother and both of his brothers, but nothing was learned
> to help in the defense.
>
> The primary information, which I was able to gleam from speaking
> with the witnesses, Kenneth Holley and David Rivas, was that they
> had no independent recollection of whether or not Mr. Goodrum
> participated in the delivery of the refrigerator and that he may well
> have been present at the time the refrigerator had been delivered.
> Neither one of them really knew for sure, so I did not want to ask
> them about our conversations in front of the jury.  I particularly recall
> excusing Mr. Holley from testifying because I feared he would hurt
> the defense of Mr. Goodrum at trial.  *Ex parte Goodrum* at 227.

In contrast to defense counsel's affidavit, the affidavits from Petitioner's family members,

assert that defense counsel did not contact them.  Setting aside for a moment any such alleged

dispute, this Court, having reviewed the information contained in these affidavits, finds that none

provide any particularly relevant information regarding Petitioner's guilt.[3]  The Court observes that

---

[3] In reviewing the affidavits submitted, the Court observes that Russell Goodrum would have testified that he contacted defense counsel several times requesting an update regarding the status of his brother's case, but he also concedes that he "had no direct involvement in the case" and didn't "know if he could be any help." *Ex parte Goodrum* at 84-88.  Furthermore, contrary to his assertions, defense counsel did provide Russell Goodrum with Petitioner's trial date so it is unclear why he did not attend the trial.  *Id.*  Turning to Norma L. Holley's affidavit, the Court finds nothing contained in her affidavit that would be helpful regarding guilt.  *Id.* at 89.  Finally, Loralie Hursman's affidavit would have only established that Petitioner

the affidavit from Kenneth Holley, Petitioner's step-brother, sets forth that Mr. Holley was an independent contractor delivering refrigerators for Montgomery Wards and was fired from this job because there were charges that he stole from the company.  Although Mr. Holley further stated in his affidavit that Petitioner did not work for him, this does not necessarily mean that Petitioner did not lend further assistance to his step-brother by delivering the refrigerator to the victim that day. Notwithstanding this distinction, defense counsel made the determination, presumably due to his felony conviction, not to call Mr. Holley because, if called, Mr. Holley would only hurt Petitioner's case.[4]  *Ex parte Goodrum* at 227.  Trial counsel's determination not to call Mr. Holley was a reasonable trial strategy which falls within the broad range of professional assistance. *Moreno*, 717 F.2d at 177.

Next, turning to the affidavit of Ronni Cobb, the Court observes that, even though she also concedes that Petitioner did loan Holley the money to start the delivery business and that Petitioner did help Holley out several times for different reasons, she also would have stated that Petitioner did not work for Kenneth Holley.  However, as previously discussed, she was in Hawaii and not available to testify.  *Ex parte Goodrum* at 80-81.

Nevertheless, even assuming, arguendo, that trial counsel did not interview these potential witnesses and this was in some way deficient, Petitioner's conclusory statements are not sufficient to establish that but for any alleged errors of trial counsel a reasonable probability exists that the jury would not have convicted him. *See Wilkerson v. Whitley*, 16 F.3d 64, 68 (5th Cir. 1994), (opinion

had bad and visible psoriasis, however, this was presented to the jury by way of other evidence and, as the victim testified on cross-examination, she would not have been able to tell this because the assailant was wearing a ski mask at the time of the rape and it was too dark to see any such skin condition.  *Id.* at 90.

[4] Mr. Holley was charged and convicted of felony theft from Montgomery Wards in November of 1997.  The State had given notice of its intent to use any such conviction against this witness.  *Ex parte Goodrum* at 82; 149-156 (State Record ("S.R.") at 129-130).

reinstated in part on other grounds, 28 F.3d 498), *cert. denied*, 513 U.S. 1085 (1995) (if facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, defendant's ineffective assistance claims must fail).  Here, the evidence of the Petitioner's guilt was overwhelming.  In his affidavit trial counsel explained:

> After I reviewed the file, I determined by use of a DNA Expert which I employed to check the results of the DNA testing, performed by the Texas Department of Public Safety, concerning the DNA found at the scene of the crime.  The results of the DNA testing confirmed that Randy Edward Goodrum was present at the scene of the crime.  I did not feel that the case was very defensible and the best I could do would be to cross-up, cross-examine, or throw off the State of Texas in its presentation of the case.
>
> \* \* \*
>
> I was aware of all of the issues that Randy Edward Goodrum raised in his Post Conviction Writ of Habeas Corpus but am still at a loss to determine as to how any of these issues he points out in [in his writ] where I may have been deficient could have overcome the DNA evidence. \* \* \* I do not know of any additional investigation that I could have done that would have changed the result in this case.  *Ex parte Goodrum* at 228.

Next, Petitioner alleges that counsel failed to investigate his truck (claim #4).  A witness testified at trial that he saw a truck suspiciously parked in the neighborhood at around 4:00 a.m. on the date of the attack and that the hood was still warm.  This witness provided a description of the vehicle which matched Petitioner's vehicle in all respects except possibly color, which the witness relayed as blue.  Petitioner appears to fault defense counsel for not obtaining proof that his truck was green, not blue.  The State obtained records from the Texas Department of Transportation of the title history for the vehicle and offered it into evidence.  Nothing in these records indicate what color the vehicle was when Petitioner owned it, however, a document following the sale clearly reflects that

it was blue.  Aside from obtaining the title history, which was not particularly helpful, Petitioner offers no evidence setting forth how counsel might have been able to discover this fact.  *See Lackey v. Johnson*, 116 F.3d at 152 (a defendant cannot withhold information from his attorney and later claim counsel was ineffective for failing to discover the evidence).  Moreover, Petitioner fails to establish that this would have changed the result of the trial.

In his eighth claim, Petitioner alleges that defense counsel failed to use available funds to hire an investigator and, had he done so, could have discovered that he was not employed in the delivery business; the color of his truck; and could have investigated the victim's ex-husband as a possible suspect.  Petitioner does not state what favorable evidence would have been uncovered had an investigator been hired.  Moreover, Petitioner fails to establish that had an investigator been hired to look into these matters, that the result would have been different.  *See also Ex parte Goodrum* at 226-229.  Accordingly, his claim fails.

Finally, in his eleventh claim, Petitioner alleges that defense counsel rendered ineffective assistance of counsel because he failed to investigate the victim's former spouse as a potential suspect.  His claim is without merit since he not only fails to show any favorable evidence that would have been uncovered, but he also fails to establish how any such failure prejudiced his case.

For all the reasons discussed, Petitioner fails to overcome the strong presumption of competence and high burden of actual prejudice required to establish ineffective assistance of counsel.  Accordingly, Petitioner's first, fourth, eighth, tenth, and eleventh claims of ineffective assistance are without merit.

### 2.  *Issues Regarding Preparation for Motion to Suppress (Claim #2)*

Petitioner alleges that counsel provided ineffective assistance of counsel because he failed to prepare for the suppression hearing.  Petitioner does not allege that counsel did not file a motion

to suppress or appear for the hearing, nor does he allege that counsel did not actively participate in the hearing.  Petitioner merely speculates that defense counsel must not have prepared for the hearing because had he prepared, he would have offered the testimony of his step-brother, Kenneth Holley, and of David Rivas, which would have established that Petitioner did not work for Holley. Petitioner's conclusory allegations are without merit.  *Schlang v. Heard*, 691 F.2d 799.

The record reflects that two motions to suppress were filed in which the defense was seeking to exclude the blood and hair samples obtained from Petitioner on the basis that probable cause did not exist to issue the warrant.  (S.R.at  23-25; 86-87).  A hearing was held on the motions to determine if the probable cause affidavit was factually sufficient so as to support the issuance of the search warrant.

A review of the record and transcript from the suppression hearing clearly shows counsel actively participated in the hearing and, in conducting a lengthy cross-examination of the State's witness, was able to successfully elicit a number of factual inaccuracies that were relied upon in obtaining the search warrant.  (T.T., Vol. 2 at 9-41; 45-46).  Defense counsel did not offer testimony from either Kenneth Holley or David Rivas at the hearing.  However, contrary to Petitioner's conclusory allegations, there is simply no evidence that either witness would have testified that Petitioner was not present at the delivery.  Furthermore, as explained by counsel, Kenneth Holley's testimony would more likely have hurt Petitioner's case instead of aiding it.  The Court will not second-guess the reasonable strategic choices of trial counsel.  *Moreno v.* Estelle, 717 F.2d at 177. Moreover, in examining the hearing as a whole, this Court cannot conclude that trial counsel's performance was deficient in either preparing for or engaging in the suppression hearing. *Strickland,* 466 U.S. at 688.  Finally, the mere fact that defense counsel did not prevail in the motion is not evidence that his representation violated Petitioner's Sixth Amendment rights.

3.  *Issues Regarding Pursuit of Discovery Motion & Review of State's File (Claim #3)*

Petitioner claims counsel failed to pursue discovery motions and review the state's file.

Petitioner's claim fails.  Contrary to Petitioner's conclusory allegations, defense counsel swears

under oath that he did review the State's file.  Specifically, in his affidavit, defense counsel states:

> I reviewed the entire State's file prior to the Motion to Suppress
> Hearing in April, 2001.  I remember reviewing each item in the file,
> as well as the offense report as it related  to the acquisition of a
> search warrant.  At a later date, prior to the trial, I reviewed the
> [State's] file again.  At that time, I discovered punishment evidence
> by other victims concerning allegations of sexual assaults in which
> Mr. Goodrum was a suspect.  *Ex parte Goodrum* at 226.

Moreover, the record reflects that defense counsel filed a motion for discovery (SR. at 66-73) and

a supplemental motion for discovery (SR. at 123-124).  In response,  the State provided defense

counsel with the information requested prior to trial.  Aside from his conclusory allegations,

Petitioner fails to establish counsel's conduct was deficient.  Furthermore, his claim also fails

because has not established prejudice.

4.  *Issue Regarding Calling Jail Doctor (Claim #5)*

Petitioner alleges counsel failed to call the jail doctor as a witness to testify as to his psorasis.

However, evidence that Petitioner suffered from psoriasis was presented to the jury through other

means and merely calling the jail doctor to confirm this would have only been cumulative.  (T.T.,

Vol. 6 at 83-86).  Furthermore, in his affidavit defense, counsel states that he "did not believe the

issue of Mr. Goodrum's skin disease was sufficient to justify calling a  jail doctor or anyone else to

testify because the alleged sexual assault took pace in the dark with a masked [assailant]."  *Ex parte*

*Goodrum* at 229; *see also* (T.T., Vol. 4 at 62:13-16).  Petitioner's claim is without merit.  *See*

*Moreno v. Estelle*, 717 F.2d at 177 (trial counsel should not be deemed ineffective by making

14

reasonable strategic choices based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial.")

### 5. *Issue Regarding Re-Testing DNA (Claim #6)*

Petitioner claims that counsel failed to retest the DNA used at the punishment phase of trial. Petitioner's claim is unfounded.  At the trial the State later offered testimony from three other victims who testified that they were sexually assaulted.  The record reveals that none of the victims could identify Petitioner as their attacker, however, the State submitted evidence that the modus operandi in each attack was similar (T.T. Vol. 8 at 20-25; 39-44; 88-92); there was testimony from a witness who placed Petitioner at the scene of one of the attacks (T.T. Vol. 8 at 6-15); and, there was DNA evidence from the rape kits of the two other victims that matched or was consistent with Petitioner's DNA.  (T.T., Vol. 8 at 79:4-23;  145:5-13).  Although Petitioner contends that trial counsel should have retested the DNA derived from the rape kits, he fails to establish that even had he done so, anything favorable would have been discovered, or, that the result would have been any different at the punishment phase of his trial.  Petitioner can not rely on mere speculation or conclusory allegations to support his claim of ineffective assistance. *Bradford v. Whiteley*, 953 F.2d 1012; *Schlang v. Heard*, 691 F.2d at 799.

### 6. *Issue Regarding Objecting to Testimony of State Witness (Claim #7)*

Petitioner asserts that counsel failed to object to the testimony of State witness, Dr. Arthur Eisenberg, because his testimony constituted impermissible bolstering.  A review of the record reveals that the State intended to introduce the DNA evidence by calling the lab technician who performed the DNA analysis.  (T.T., Vol. 4 at 196).  The record further reflects that defense counsel objected to the qualifications of this witness and claimed that the requirements of Rule 702 could only be met with the testimony from an expert who held a degree that was higher than a bachelor

15

of science.  (T.T., Vol. 4 at 197).  It appears that defense counsel, limited in the ability to call his own expert, was concerned that the lab technician would not be able to address his specific questions, and  would, therefore, limit his ability to get evidence in through her in his attempt to persuade the jury of the faults in DNA testing.  To accommodate the defense, the State offered the testimony of Dr. Arthur Eisenburg, the Director of the DNA Identity Laboratory at the University of North Texas Health Science Center at Fort Worth.  Outside the presence of the jury, a *Kelly* hearing was held and the court determined that the DNA evidence was admissible.  The expert testified in front of the jury and during cross-examination, defense counsel questioned this witness in an attempt to suggest to the jury that the proper technique was not used by the lab technician and that DNA testing is not completely reliable.  Although defense counsel proved unsuccessful in his attempts to secure any such testimony from this expert, counsel's performance was not deficient as it appears to have been a reasonable trial tactic or strategy.  A court will not find inadequate representation, with the benefit of hindsight, merely because it might disagree with the counsel's strategic choices.  *Strickland*, 466 U.S. 689-90.  Accordingly, Petitioner's claim is without merit.

### 7.  *Issue Regarding DNA Expert & Obtaining Independent Blood Sample (Claims #9 & 13)*

Petitioner alleges that defense counsel failed  to have a DNA expert present in court and also failed to obtain an independent blood sample from him to further test the accuracy of the State's DNA evidence.  Both of Petitioner's claims are without merit.

As previously discussed, defense counsel did retain a DNA expert to review all the testing completed.  Upon completion of her review, the defense's DNA expert explained her conclusions as follows:

> The only samples that contain your client's DNA are a cutting from a nightshirt and a cutting from the carpet.  No female profile was

16

obtained on those two items, only your client's profile. This ties your client to sexual activity in that house, but not with a specific individual. It also does not indicate that a sexual *assault* necessarily occurred, only that sexual activity occurred. It also does not reveal when or how the sample was deposited.

Overall, it appears that the testing was performed by the DPS in a scientifically acceptable manner and I do not disagree with the conclusions that they reached based on their findings. *Ex parte Goodrum* at 146.

Furthermore, contrary to Petitioner's suggestions, defense counsel consulted with a DNA expert and made the determination that she would not be needed at the trial. Specifically, in his affidavit, defense counsel states:

I had numerous conversations with Amber Moss with GeneScreen (DNA expert hired by defense counsel) about the duplication of the DNA testing done by the Texas Department of Public Safety. After my conversations with Ms. Moss, I was of the opinion that the results in the possession of the State concerning the DNA were the same and the results from Ms. Moss. Although there were some minor scrivener's errors in the report, there was no reason for me to call my own expert because she would not have rebutted the information and/or results provided by the State's experts and witnesses. *Ex parte Goodrum* at 226-227.

In light of his own expert's opinion regarding the DNA testing and results, defense counsel's determination not to call her to testify was reasonable trial strategy.[5]

Petitioner also appears to contend that there could have been a mix-up of the blood samples and that the blood tested might not really have been his blood sample. However, Petitioner's claim is nothing more than mere speculation. A review of the trial transcript reflects that the State called a number of witnesses who offered testimony establishing the chain of custody of Petitioner's blood

---

[5] To the extent that Petitioner contends that counsel was ineffective because he failed to have this expert physically present during the trial to assist counsel, this claim would fail since trial counsel could have reasonably determined that her presence at the trial would only be questioned by jurors and, if identified, might only have invited speculation in the minds of the jury as to why she was not called as a witness.

sample.  No evidence of any break in the chain of custody was established, and there was no evidence of any tampering.  Although trial counsel did object prior to the admission of the blood, his objection was overruled by the trial court.  Furthermore, the court of appeals found no error in admitting the evidence.  Since there was no evidence of either a break in the chain or tampering, Petitioner's claim of the possibility of a "mix-up" is nothing more than speculation, which is clearly insufficient to support his claim.  *Bradley v. Whitley*, 953 F.2d at 1012.

### 8.  *Issue Regarding Severing the Two Counts in Indictment (Claim #12)*

Petitioner contends that counsel was ineffective for failing to sever the two counts in the indictment that arose out of the same criminal episode.[6]  *See* Tex. Penal Code § 3.02.  Petitioner speculates that if the counts had been severed "the state may have very well dismissed the second count."  (Pet'r Memo. at 63).  Petitioner cannot support a claim of ineffective assistance of counsel on speculation or conclusory allegations.  *Schlang v. Heard*, 691 F.2d at 799.  Moreover, Petitioner's claim is clearly without merit as any such request under Texas law would not have benefitted him, but instead would have harmed him by subjecting him to the possibility of consecutive sentences. Tex. Penal Code § 3.03; Tex. Code Crim. Proc. art. 42.08.

### 9.  *Issue Regarding Voice Comparison Line-Up (Claim #14)*

Petitioner alleges counsel failed to obtain a voice comparison line-up.  Petitioner's apparent claim is that had defense counsel obtained a voice comparison, the victim would not have been able to identify him as the assailant.  However, Petitioner's allegation is too speculative to support a claim of ineffective assistance of counsel.  Furthermore, even assuming a voice line-up had been

---

[6] The indictment charged that on or about June 14, 1997, Petitioner, exhibiting a deadly weapon (*i.e.,* a knife), intentionally and knowingly caused the penetration of the female sexual organ of Mary Williams Quinn (count one) and, on or about that same date, intentionally and knowingly caused the penetration of the anus of Mary Williams Quinn.

obtained by defense counsel, Petitioner fails to establish how this would have changed the result since his conviction was not merely based on the victim's testimony of his voice, but also based on his physical description, a photo line-up, and the DNA evidence.

### 10. *Issue Regarding Witnesses During Punishment Phase of Trial (Claim #15)*

Petitioner alleges that counsel failed to contact, prepare, and present witnesses during the punishment phase of trial.  Specifically, Petitioner contends that he should have called his family members who would have testified that he was a family man and had a child.  Petitioner also faults his attorney for failing to interview the victims of the extraneous sexual assault cases.

To establish ineffective assistance for alleged errors in the punishment phase of trial, Petitioner must establish that a reasonable probability exists that absent counsel's unprofessional errors, the sentence would have been "significantly less harsh."  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).  A significantly less harsh sentence must be appreciable before relief is warranted. *Id.* at 88, n. 4.  In deciding whether such prejudice occurred, a number of factors should be considered, such as: (1) whether the actual amount of sentence imposed on the defendant was by the judge or jury; (2) the minimum and maximum sentences possible; (3) the relative placement of the sentence actually imposed within that range; and (4) the various relevant mitigating and aggravating factors  that were properly considered by the sentencer.  *Id.* at 88-89.

Here, Petitioner was found guilty of the offense of  aggravated sexual assault with a deadly weapon.  The range of punishment for this offense is life or for any term of not more than 99 years or less than 5 years.  Tex. Pen. Code § 12.32.  In addition, the jury found five (5) of the eleven (11) prior felony convictions charged "true" for purposes of enhancement.  Given the nature of the offense for which he was convicted and his numerous prior felony convictions, Petitioner fails to

establish that had his family testified at the punishment phase that he was a family man and had a child that the jury would have been moved to impose a sentence of less than life.  Petitioner also fails to establish that any of the victims of the extraneous offenses would have spoken to his attorney or, even if they had, how this would have resulted in punishment that was "significantly less harsh."

11. *Conclusion - State Court Application of Strickland Not Contrary to Federal Law Nor Objectively Unreasonable*

The AEDPA requires a federal court to "defer to a state habeas court's adjudication of a state prisoner's habeas claims on the merits" unless the decision is contrary to established federal law or is unreasonably based on the evidence presented.  *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099 (1998).  Here, the records reflect that the state district court issued and submitted findings of fact and conclusions of law to the Texas Court of Criminal Appeals.  *Ex parte Goodrum* at 243-248.  The state court, addressing each of Petitioner's claims of ineffective assistance, found Petitioner failed to meet the high burden of demonstrating that he received ineffective representation at trial.  *Id.*  Thereafter, the Texas Court of Criminal Appeals denied Petitioner's state writ.  Petitioner fails to present a compelling argument that the state court erred in reaching its decision that defense counsel provided ineffective representation in violation of his Sixth Amendment rights in the punishment phase of his trial.  Having failed to establish that the state court's application of *Strickland* was objectively unreasonable, this Court finds no basis exists for granting federal habeas relief.  28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 409-10.

Accordingly, for all these reasons, the Court finds that Petitioner's ineffective assistance of trial counsel claims are without merit and **RECOMMENDS** that Respondent's Motion be **GRANTED** on all these issues.

D.  Claim of Ineffective Assistance of Appellate Counsel

20

Petitioner claims he received ineffective assistance from appellate counsel because the attorney failed to file a motion for new trial based on a claim of ineffective assistance of trial counsel. Petitioner claims the motion for new trial would have assisted him in building a record for his claim of ineffective assistance of trial counsel. (Pet. at 8).

In order to establish a claim for ineffective assistance of appellate counsel, Petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by it. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying standard set forth in *Strickland, v. Washington*, 466 U.S. 668, 689 (1984)). In doing so, he has the burden of overcoming the strong presumption that counsel's performance was effective.

Petitioner's allegations that appellate attorney, Kelly McClendon, rendered ineffective assistance of counsel are unfounded. Initially, as a matter of state law, the more "appropriate vehicle" for investigating and developing a record concerning claims of ineffective assistance of counsel is a state writ of habeas corpus. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App. 1977). Therefore, contrary to his apparent allegations, Petitioner had a method to raise his claims and establish a record regarding claims of ineffective representation. Petitioner fails to establish what more of a record would have been established had appellate counsel filed a motion for new trial on his claims of ineffective assistance of counsel than was established in his state writ. Petitioner further fails to establish that a reasonable probability that the result would have been different had a motion for new trial been filed in which appellate counsel raised this issue.

Moreover, in response to his claim, appellate counsel provided an affidavit in which she explains:

21

> During my meetings with Mr. Goodrum, we discussed the propriety
> of filing a motion for new trial in his case. Mr. Goodrum expressed
> the complaints he desired to have raised in a motion for new trial. In
> my professional opinion, Mr. Goodrum's complaints did not raise
> meritorious or nonfrivolous grounds to pursue a motion for new trial.

(S.R. at 235). Petitioner has no constitutional right "to compel appointed counsel to press non-frivolous points requested by the client if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel was not deficient in failing to file a meritless motion for new trial. *See Smith v. Robbins*, 528 U.S. at 278.

Finally, to the extent Petitioner also claims that appellate counsel rendered ineffective assistance for not raising the issue of legal sufficiency, this claim is unfounded. As previously discussed, it is difficult to see how a reasonable attorney could, in good faith, argue that the evidence in this case was legally insufficient. Appellate counsel cannot be considered ineffective for failing to assert a meritless claim on appeal. *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981); *Hooks v. Roberts*, 480 F.2d 1196, 1197-98 (5th Cir. 1974).

For all these reasons, the Court finds that Petitioner's ineffective assistance of appellate counsel claims are without merit and **RECOMMENDS** that Respondent's Motion be **GRANTED** on this issue.

E. Request for Evidentiary Hearing

Petitioner has made numerous requests for an evidentiary hearing as he believes one is necessary to establish his claim of ineffective assistance of counsel. The Court has carefully reviewed the record and concludes that Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court only if he alleges facts, which, if proven, would entitle him to habeas relief. 28 U.S.C. § 2254(e)(2); *Clark v. Johnson,* 202 F.3d

760, 766 (5th Cir. 2000).  This Court concludes that there is no factual dispute, which if proven true, would entitle Petitioner to federal habeas corpus relief.

<u>**Conclusion**</u>

For all the reasons stated herein, the Court **RECOMMENDS** the Respondent's Motion for Summary Judgment (Instrument No. 15) be **GRANTED** and the Petition for a Writ of Habeas Corpus of Randy Edward Goodrum (Instrument No. 1) be **DISMISSED** in its entirety.

The Court **RECOMMENDS** that Petitioner's "Motion/Request for Reconsideration of the Denial of His Second Motion for Evidentiary Hearing" (Instrument No. 26) be **DENIED** because the Court has reviewed the entire state records, as well as the affidavits submitted by Petitioner's, and finds no basis to exists that would warrant an evidentiary hearing in this case.

The Clerk shall send copies of this Report and Recommendation to the Parties.  The Parties shall have until **August 16, 2006,** in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk.  <u>The Objections shall be mailed to the Clerk's Office in Galveston, Texas 77553 at P.O. Drawer 2300</u>.  **Any Objections filed shall be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge",** which will then be forwarded to the District Judge for consideration.  Failure to file written objections within the prescribed time shall bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____2nd___                                    _____ day of August, 2006.

_____
John R. Froeschner
United States Magistrate Judge

23